UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

EDWARD ZELTMAN,

                Plaintiff,

   -against-                                    1:20-CV-0571 (LEK/CFH)

INFINIGY SOLUTIONS, LLC, *et al.*,

                Defendants.

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

Pro se plaintiff Edward Zeltman brings this action under Title I of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 1201, the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301 et seq., and New York common law against Infinigy Solution, LLC ("Infinigy"), Charles Smith, Jeffrey Gutowski, and John Stephens. Dkt. No. 19 ("Amended Complaint") ¶¶ 1, 5–8.

Now before the Court is Defendants' motion to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Dkt. No. 21-4 ("Defendants' Memorandum of Law"). Plaintiff opposes Defendants' motion, and Defendants filed a reply. Dkt. Nos. 23 ("Response"); 24 ("Reply").

For the following reasons, the motion is granted in part and denied in part.

**II.    BACKGROUND**

The Court draws all facts, which are assumed to be true, from the amended complaint. Bryant v. N.Y. State Educ. Dep't, 692 F.3d 202, 210 (2d Cir. 2012).

Plaintiff is a veteran of the United States Army Reserves who was employed by Infinigy as a construction manager from January 2, 2019 to March 18, 2019. Am. Compl. ¶¶ 9–10, 18. During that time, he faced constant disparaging comments about his status as a military veteran from Smith, Plaintiff's direct supervisor. Id. ¶¶ 11–12. Smith's comments included statements that the military never prepared Plaintiff for his position with Infinigy and that Plaintiff was "retarded" and "autistic" in relation to his military background. Id. ¶ 12.

Plaintiff's duties as a construction manager included coordinating with outside contractors, handling contract bidding, and walking construction sites. Id. ¶ 10. On or around March 13, 2019, Gutowski, an Infinigy vice present and part owner, told Plaintiff he would soon be sent to North Carolina to perform heavy manual labor on a construction project. Id. ¶¶ 7, 13. This marked a significant departure from Plaintiff's duties up until that point. Id. ¶ 13. On March 15, 2019, Gutowski instructed Plaintiff and three other employees to travel in a rented U-Haul truck to the home of Infinigy CEO Stevens. Id. ¶¶ 8, 14. Once there, they were to move a saw weighing between 600 and 800 pounds from Stevens' garage onto the truck, drive to another residence about ten miles away, and exchange the saw for a similar saw stored in the garage of that residence. Id. ¶ 14.

While walking to Stevens' garage to retrieve Stevens' saw with his coworkers, Plaintiff slipped on ice and landed on his left shoulder. Id. ¶ 15. Plaintiff felt he had not seriously injured himself and continued working. Id. Later, in the process of exchanging the saws, Plaintiff injured his back while loading the other saw onto the truck. Id. ¶ 16. Plaintiff was examined by a physician assistant that day. Id. ¶ 17. He was restricted from "sitting, standing, or driving for more than thirty minutes at a time, from lifting, pushing, or pulling, from bending or twisting, from kneeling or squatting, from prolonged walking, and from operating machinery." Id. On

March 18, 2019, Plaintiff informed Smith of his inability to perform additional heavy work in North Carolina and requested that Smith not send him there. Id. ¶ 18. Smith told Plaintiff he would have to go, or he was going to be fired. Id. Plaintiff then told Gutowski what he had told Smith and produced a medical note attesting to his incapacity. Id. Gutowski fired Plaintiff and commented that he could not "believe [Plaintiff was] doing this to us." Plaintiff's March 15, 2019 injury has substantially limited him from "sitting, standing, lifting, pushing, pulling, bending[,] twisting, kneeling or squatting, walking, and operating machinery." Id. Plaintiff obtained a right-to-sue letter from the United States Equal Employment Opportunity Commission. Id. ¶ 20.

Plaintiff requests unspecified compensatory damages and punitive damages, as well as court costs and a declaration that Defendants' actions and omissions violated Plaintiff's rights under the ADA and USERRA. Id. at 7.

### III. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 678 (citing Twombly, 550 U.S. at 556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Put another way, a claim is plausible if it is supported by "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Twombly, 550 U.S. at 556. In assessing whether this standard has been met, courts "must accept all allegations in the complaint as true and draw all

inferences in the light most favorable to the non-moving party[] . . . ." In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007) (internal citation omitted). "Pro se submissions are reviewed with 'special solicitude,' and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" Cordero v. Semple, 696 Fed. Appx. 44, 45 (2d Cir. 2017) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 417, 474–75 (2d Cir. 2006)).

## IV. DISCUSSION

### A. ADA Claims Against Infinigy, Stevens, and Gutowski

Defendants seek to dismiss Plaintiff's discrimination claims on the ground that Plaintiff has failed to allege that he was disabled within the meaning of the ADA, arguing that he has pled facts amounting to only "a minor or transitory injury." Defs.' Mem. of Law at 4–5. The Court disagrees.

For Plaintiff to state a claim for *prima facie* discrimination under the ADA, he must allege that: "(1) [his] employer is subject to the ADA; (2) [he] is disabled within the meaning of the ADA; (3) [he] is otherwise qualified to perform the essential functions of [his] job with or without accommodation; and (4) [he] suffered an adverse employment action because of [his] disability." Chesebro v. Town of Guilderland, No. 18-CV-1294, 2019 U.S. Dist. LEXIS 139738, *16–17 (N.D.N.Y. Aug. 19, 2019) (quoting Harvin v. Manhattan & Bronx Surface Transit Operating Auth., 767 F. App'x 123, 127 (2d Cir. 2019)). As a court in this Circuit articulated:

> The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Major life activities include standing, lifting, bending, speaking, and working. Id. § 12102(2)(A). Under the EEOC's regulations, "[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA and 'is not meant to be a demanding standard.'" Parada v. Banco Indus. De Venezuela, C.A.,

4

> 753 F.3d 62, 69 n.3 (2d Cir. 2014) (quoting 29 C.F.R. § 1630.2(j)(1)(i)). As a result, "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." Id. (quoting 29 C.F.R. § 1630.2(j)(1)(ii)).

Horsham v. Fresh Direct, 136 F. Supp. 3d 253, 262 (E.D.N.Y. 2015).

Defendants argue that "temporary impairments with little or no long-term permanent impact are not disabilities under the ADA." Defs.' Mem. of L. at 4. However, Plaintiff alleges that his injury occurred March 15, 2019 and "has substantially limited him." Am. Compl. ¶ 19. The Court acknowledges that Plaintiff's characterization of his injury might be read to mean that Plaintiff was limited in his ability to engage in the specified life activities merely at some point after the injury. See id. In context, however, and keeping in mind that pro se complaints should be "interpreted to raise the strongest arguments that they suggest[,]" his statement is better read as indicating that Plaintiff has been continually limited by his injury up to or beyond the date upon which he commenced this action. See Cordero, 696 Fed. Appx. at 45 (quoting Triestman, 470 F.3d at 474–75). Plaintiff filed this claim on September 21, 2020. Am. Compl. at 1. It has been over a year since Plaintiff's injuries, rendering his impairment more than transitory as a statutory matter. See § 12102(3)(B). Further, several of the activities identified by Plaintiff as having been substantially limited, including standing and lifting, are major life activities. Horsham, 136 F. Supp. 3d at 262. Plaintiff has therefore demonstrated that his injury constituted a disability within the meaning of the ADA. See Chesebro, 2019 U.S. Dist. LEXIS 139738 at *16–17 (quoting Harvin, 767 F. App'x at 127).

Defendants do not contest Plaintiff's allegation that Infinigy is subject to the ADA, that he was otherwise qualified to perform the essential functions of his job, or that he suffered an adverse employment action due to his inability to work (i.e., because of his disability, in light of

5

allegations demonstrating that his injury qualifies as such). Plaintiff thus states a discrimination claim under the ADA.

Defendants seek to dismiss Plaintiff's discrimination claims as asserted individually against Stevens and Gutowski. Defs.' Mem. of Law at 6. Defendants argue, correctly, that an individual may not be held personally liable under the ADA. See id. (citing Sherman v. County of Suffolk, 71 F. Supp. 3d 332, 343 (E.D.N.Y. 2014); King v. Town of Wallkill, 302 F. Supp. 279, 295 (S.D.N.Y. 2004); Menes v. CUNY Univ. of N.Y., 92 F. Supp. 2d 294, 306 (S.D.N.Y. 2000)). Consequently, Gutowski and Stevens cannot be held personally liable for the alleged discrimination.

Plaintiff thus states a discrimination claim under the ADA against Infinigy, but not against Stevens or Gutowski individually.

### B.  USERRA Claims Against Infinigy, Stevens, and Gutowski

Defendants seek to dismiss Plaintiff's discrimination claims under USERRA, arguing that Plaintiff has failed to plausibly allege facts supporting a claim that he was discriminated against based upon his previous military service. Defs.' Mem. of Law at 7. The Court agrees.

USERRA provides that "[a] person who . . . has performed . . . in a uniformed service shall not be denied . . . retention in employment . . . or any benefit of employment by an employer on the basis of that . . . performance of service[.]" 38 U.S.C. § 4311(a). "An employer shall be considered to have engaged in actions prohibited . . . under subsection (a), if the person's . . . service . . . in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such . . . service[.]" Id. § 4311(c)(1). To state a claim, a plaintiff must plead "facts upon which it could plausibly be inferred that his military service . . . was a 'substantial or motivating factor'" in the

adverse employment action against him. Hunt v. Klein, 476 F. App'x 889, 891 (2d Cir. 2012) (quoting NLRB v. Transp. Mgmt., 462 U.S. 393, 401 (1983)). "When the company official who makes the decision to take an adverse employment action is personally acting out of hostility to the employee's membership in or obligation to a uniformed service, a motivating factor obviously exists." Staub v. Proctor Hosp., 562 U.S. 411, 417 (2011).

Alternatively, "if a supervisor performs an act motivated by antimilitary animus that is *intended* by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable under USERRA." Id. at 422 (emphasis in original). "[U]nder such a 'cat's paw' theory of discrimination[,]" an employer can be held liable "only if the decisionmaker 'relies on facts provided by the biased supervisor' in deciding to take an adverse employment action." Emmanuel v. Cushman & Wakefield, Inc., No. 13-CV-2894, 2015 U.S. Dist. LEXIS 113280, at *21 (S.D.N.Y. Aug. 26, 2015) (quoting Staub, 562 U.S. at 421). "Absent such reliance, the supervisor's biased act should not be considered a proximate cause of the adverse employment action." Emmanuel, 2015 U.S. Dist. LEXIS 113280, at *21 (quoting Staub, 562 U.S. at 421).

Plaintiff alleges that Smith was Plaintiff's direct supervisor at the time of Smith's anti-military insults. Am. Compl. ¶¶ 11–12. The Court assumes that Smith's insulting characterizations of Plaintiff were intended to cause Plaintiff's termination and that these characterizations qualify as "facts" upon which an employer might rely in deciding to terminate an employee. See Emmanuel, 2015 U.S. Dist. LEXIS 113280, at *21 (quoting Staub, 562 U.S. at 421). Plaintiff still fails to plausibly allege facts permitting an inference that Gutowski, who fired Plaintiff, or the remaining Defendants relied on Smith's insults in deciding to fire Plaintiff. See id. (quoting Staub, 562 U.S. at 421). As Defendants point out, "it is not alleged that Mr.

7

Gutowski ever commented upon, or made reference to, [P]laintiff's previous military service[,]" Defs.' Mem. of Law at 8, that "Stevens or Infinigy Solutions made any comments or discriminated . . . based upon [Plaintiff's] prior military service," id., or that Stevens "played any role whatsoever in [P]laintiff's termination," id. at 9.

Plaintiff's allegation that "[i]n light of the repeated and constant denigration by defendant Smith, regional manager of Infinigy, of Plaintiff's status as a military veteran, such protected status was a substantial or motivating factor in Infinigy's adverse employment action in terminating Plaintiff[,]" Am. Compl. ¶ 30, can be read two ways, neither of which alleges facts demonstrating Plaintiff's service was a substantial or motivating factor in the adverse employment action, or that Defendants relied upon Smith's statements in their adverse employment action. On one reading, Plaintiff alleges that the combination of Smith's anti-military insults and status as regional manager of Infinigy inherently renders Plaintiff's protected status a substantial or motivating factor. This conclusory allegation is insufficient because a plaintiff's protected status being a substantial or motivating factor is itself an element of the claim. See Hunt, 476 F. App'x at 891 (quoting NLRB, 462 U.S. at 401). On another, Plaintiff argues in conclusory fashion that the Court should presume from Smith's influential position within the company that Gutowski in fact relied upon Smith's insults in deciding to terminate Plaintiff. See Am. Compl. ¶ 30. But Plaintiff's reliance argument is, then, bereft of allegations demonstrating Gutowski's purported reliance on the insults, and thus equivalent to a bald legal conclusion that "the decisionmaker relie[d] on facts provided by the biased supervisor." See Emmanuel, 2015 U.S. Dist. LEXIS 113280, at *21 (quoting Staub, 562 U.S. at 421).

Plaintiff has not pled facts creating an inference that his military service was a "substantial or motivating factor" in Defendants' decision to fire Plaintiff, or that Defendants

"relie[d] on facts provided by" Smith in making this decision. See Hunt, 476 F. App'x at 891 (quoting NLRB, 462 U.S. at 401); Emmanuel, 2015 U.S. Dist. LEXIS 113280, at *21 (quoting Staub, 562 U.S. at 421). Plaintiff therefore fails to state a discrimination claim under USERRA against Infinigy, Gutowski, or Stevens, on either the traditional or "cat's paw" theory of discrimination. Since this claim fails regardless of who it is asserted against, the Court does not reach the issue of individuality liability for Gutowski and Stevens.

### C. Common Law Tort Claims

Plaintiff's causes of action for prima facie tort, intentional infliction of emotional distress, and negligent infliction of emotional distress derive from Defendants' alleged acts following Plaintiff's termination. See Am. Compl. ¶¶ 35, 38, 41. Plaintiff's federal causes of action, by contrast, originate from the termination itself. See id. ¶¶ 21–25, 28, 29–30, 33. The Court "has an obligation to consider, *sua sponte*, its exercise of supplemental jurisdiction." See Weiglein v. Nat'l Grid, No. 11-CV-809, 2013 U.S. Dist. LEXIS 126344 at *18 n.5 (W.D.N.Y. Aug. 15, 2013). The Court must therefore determine whether it may exercise supplemental jurisdiction over Plaintiff's three common law tort claims. See Oneida Indian Nation v. Phillips, 981 F.3d 157, 170 n.62 (2d Cir. 2020) (citations omitted) (noting that a "federal court has authority to exercise supplemental jurisdiction under 28 U.S.C. § 1367 over claims not within federal jurisdiction only if there is a related claim that properly invokes the court's subject matter jurisdiction"). Defendants argue in their brief that the Court lacks supplemental jurisdiction, "as the basis for these claims is unrelated to [P]laintiff's claims invoking federal question jurisdiction in this case." See Dkt. No. 27 at 3. The Court agrees.

Where a district court has original jurisdiction in a civil action, it "shall have supplemental jurisdiction over all other claims that are so related to claims in the action

9

within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "Under Section 1367(a), claims 'form part of the same case or controversy' when they 'derive from a common nucleus of operative fact.'" ADYB Engineered for Life, Inc. v. Edan Admin. Servs., No. 19-CV-7800, 2021 U.S. Dist. LEXIS 59666, at *31 (S.D.N.Y. Mar. 29, 2021) (quoting City of Chicago v. Int'l Coll. Of Surgeons, 522 U.S. 156, 165 (1997)). In determining "whether claims arise from a common nucleus of operative fact," courts look to whether "the [allegations] underlying the federal and state claims substantially overlapped . . . [or] the federal claim necessarily brought facts underlying the state claim before the court." See Kaplan v. Wings of Hope Residence, No. 18-CV-2972, 2020 U.S. Dist. LEXIS 22374, at *30 (E.D.N.Y. Feb. 7, 2020) (quoting Achtman v. Kirby, McInerney & Squire LLP, 464 F.3d 328, 335 (2d Cir. 2006)). The Second Circuit has detailed the circumstances under which a district court has discretion to decline supplemental jurisdiction, fulfillment of the above criteria notwithstanding:

> Section 1367(c) further provides that a district court may decline to exercise supplemental jurisdiction if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." Accordingly, a district court may refuse to exercise supplemental jurisdiction on any one of these four grounds.

Chapman v. Crane Co., 694 F. App'x 825, 828 (2d Cir. 2017) (quoting § 1367(c)).

Plaintiff realleges and incorporates by reference the allegations underlying his federal claims into his state causes of action. See Am. Compl. ¶¶ 34, 37, 40. But Plaintiff's references in each state cause of action to "[t]he above series of acts" apparently point to Defendants' alleged acts following Plaintiff's termination, not the termination itself. See id. ¶¶ 36, 39, 42. That the state claims derive solely from Defendants' alleged acts post-termination is further supported by

10

the absence of such claims from Plaintiff's original complaint. These claims were added on amendment after the commencement of the administrative proceedings during which Defendants engaged in the alleged tortious conduct. See id. ¶¶ 34–42. Plaintiff makes no allegation that Defendants' alleged acts underlying Plaintiff's federal claims gave rise to the alleged special damages or severe emotional distress detailed in his state causes of action. Plaintiff also fails to allege any temporal overlap between the two sets of allegations.

For the above reasons, the allegations underlying Plaintiff's federal claims do not underlie his state claims and, as such, do not "substantially overlap" with the allegations underlying the state claims. See Kaplan, 2020 U.S. Dist. LEXIS 22374, at *30 (quoting Achtman, 464 F.3d at 335). As the allegations underlying the federal and state claims do not arise from a "common nucleus of operative fact," the claims do not "'form part of the same case or controversy[.]'" See ADYB Engineered for Life, Inc., 2021 U.S. Dist. LEXIS 59666, at *31 (quoting City of Chicago, 522 U.S. at 165). Thus, the Court cannot exercise supplemental jurisdiction over Plaintiff's claims for prima facie tort, intentional infliction of emotional distress, and negligent infliction of emotional distress. Because supplemental jurisdiction is clearly lacking, the Court need not determine whether it should refuse to exercise supplemental jurisdiction on § 1367(c) grounds.

## V.   CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' motion to dismiss (Dkt. No. 21) is **GRANTED in part and DENIED in part**. Plaintiff's ADA claim against Infinigy may proceed. Plaintiff's ADA claims against Stevens and Gutowski, Plaintiff's USERRA claims against all defendants, and Plaintiff's common law tort claims are **DISMISSED**; and it is further

11

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:   May 24, 2021
         Albany, New York

_Lawrence E. Kahn_
Lawrence E. Kahn
Senior U.S. District Judge