UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

EDWARD ZELTMAN

                            Plaintiff,

     -against-                           1:20-CV-571 (LEK/CFH)

INFINIGY SOLUTIONS, LLC, *et al.*,

                           Defendants.

---

**MEMORANDUM-DECISION AND ORDER**

## I.  INTRODUCTION

Plaintiff Edward Zeltman commenced this action *pro se* on May 26, 2020, against Defendants Infinigy Solutions, LLC ("Infinigy"), Charles Smith ("Smith"), Jeffrey Gutowski ("Gutowski"), and John Stevens ("Stevens"). See Dkt. Nos. 1 ("Complaint"), 2 ("Summons"). Plaintiff filed an amended complaint on September 21, 2020. See Dkt. No. 19 ("Amended Complaint"). On May 24, 2021, this Court issued a Memorandum-Decision and Order dismissing all claims and defendants other than Plaintiff's allegations that Infinigy violated the Americans with Disabilities Act ("ADA"). See Dkt. No. 29 ("May 2021 MDO") at 11–12.

Now before the Court is Defendant Infinigy's motion for summary judgment and Plaintiff's cross-motion for summary judgment. Dkt. Nos. 61-15 ("Motion for Summary Judgment"), 76-1 ("Cross-Motion for Summary Judgment" or "Cross-Motion"). For the reasons that follow, both motions are denied in their entirety.

## II.      BACKGROUND

### A.  Factual Background

#### 1.  *Plaintiff's Employment with Infinigy*

In late 2018, Infinigy had an open construction manager position. See Dkt. Nos. 61-14 ¶ 1 ("Statement of Material Facts" or "SMF"); 76-3 ¶ 1 ("Response to Statement of Material Facts" or "RSMF"). Smith, then an employee of Infinigy, recommended Plaintiff for the role. See SMF ¶ 2; RSMF ¶ 2. Plaintiff submitted a resume and application indicating prior experience as a construction manager. See SMF ¶¶ 2–3; RSMF ¶¶ 2–3. Plaintiff was hired and started work on January 2, 2019, under the supervision of Smith, who reported to Gutowski. See SMF ¶¶ 4–5; RSMF ¶¶ 4–5.

As part of his duties, Plaintiff was expected to know "the basic functions of a construction manager," such as "how to manage job sites, keep projects timely and on budget, and managing crews." SMF ¶ 7; see RSMF ¶ 7. Plaintiff "was also expected to monitor the project's financials, conduct quality control reviews, complete site audits, update the project manager or operation personnel about the project, complete safety checks on sites, and meet with customers on site to go over statements of works and any issues with the project." SMF ¶ 8; see RSMF ¶ 8. Plaintiff received some training for the role from Infinigy, including training in "policies and procedures specific to Infinigy" and the "specific work Plaintiff would be overseeing, reporting requirements, material ordering, and day-to-day field operations and crew." SMF ¶ 9; see RSMF ¶ 9.

Both parties agree that, as early as January 12, 2019, there were "difficulties" between Plaintiff and Infinigy. See SMF ¶ 10 ("[I]t was apparent immediately that [Plaintiff] did not have the requisite skills, experience, or abilities for the position"); RSMF ¶ 10 ("Plaintiff's difficulties

with his supervisors began on January 12, 2019 . . . ."). Plaintiff denies Infinigy's assertion that

his performance was poor; he states that there is no reliable contemporaneous evidence of his

performance issues, and notes that he had in fact received positive feedback from Smith and

another coworker. See RSMF ¶¶ 10–13. Plaintiff asserts that the true reason for the friction

between him and Infinigy was his expressions of concern over Infinigy's numerous management

and safety issues. See RSMF ¶¶ 10, 16. Plaintiff claims that his "difficulties with his

supervisors" only began after he expressed concerns regarding the improper use of bolts at the

Cronomer Cell Tower construction site. Id. ¶ 10.

On February 20, 2019, a meeting took place between Plaintiff and Infinigy. See SMF ¶

16; RSMF ¶ 16. Infinigy asserts that the meeting's purpose was to discuss Plaintiff's poor work

performance. See SMF ¶¶ 15–16. Plaintiff, on the other hand, claims that the meeting's purpose

was to discuss Infinigy's operational issues regarding the Cronomer Cell Tower construction

site. See RSMF ¶¶ 15–16.

Plaintiff alleges in his Amended Complaint that, on or about March 13, 2019, Gutowski

informed Plaintiff that Plaintiff would soon have to transfer to North Carolina to work on a

construction project that involved heavy manual labor. See Am. Compl. ¶ 13. On March 14,

2019, Plaintiff and Gutowski had a lunch meeting together. See SMF ¶ 19; RSMF ¶ 19. In

Infinigy's view, the purpose of the meeting was to discuss Plaintiff's continued poor

performance as a construction manager, and to discuss a new role for Plaintiff within the

organization. See SMF ¶ 19, 22. Defendant states that they offered Plaintiff the option to transfer

to North Carolina from New York to perform fiber optic cable work. See id. Plaintiff denies that

either performance issues or fiber optic cable work were discussed at the meeting on March 14, 2019. See RSMF ¶¶ 19, 22.

Despite these disagreements, it is undisputed that Plaintiff agreed to transfer to North Carolina. See SMF ¶¶ 25–27; RSMF ¶¶ 25–27. Both parties also agree that Plaintiff did not express concerns about the heavy labor required for the new position at the meeting on March 14, 2019. See SMF ¶ 27; RSMF ¶ 27. Plaintiff seems to deny that he was informed that he would have to perform heavy labor in North Carolina, see id. ¶ 22, although elsewhere he states that Gutowski told him about this job requirement on or about March 13, 2019, see Am. Compl. ¶ 13.

### 2. *Plaintiff's Injury*

On March 15, 2019, Plaintiff and other Infinigy employees traveled to the home of former Infinigy CEO John Stevens to move a heavy saw. See SMF ¶ 30; RSMF ¶ 30. Plaintiff appears to assert that he that he suffered two injuries while performing this task. First, Plaintiff claims he harmed his back while lifting the saw. See SMF ¶ 31; RSMF ¶ 31. Second, Plaintiff allegedly slipped on the ice on Mr. Stevens' driveway and harmed his shoulder. See SMF ¶¶ 40–42; RSMF ¶¶ 40–42.

The parties agree that, at some point that same day, Plaintiff sought medical treatment for his back injury from WorkFit Medical in Rochester, New York. See SMF ¶ 33; RSMF ¶ 33; see also Dkt. No. 61-13 ("WorkFit Record"). Plaintiff's medical provider concluded that he had "injured his back while lifting a heavy object at work." Id. at 4. The provider placed Plaintiff on restricted duty for one week, and instructed him to avoid lifting, pushing, pulling, bending,

twisting, kneeling, and squatting. See id. at 5. Plaintiff was also instructed to avoid prolonged standing and walking, and was restricted to "[s]it down duty only." Id.

The parties disagree as to when Defendant learned about this injury and its associated restrictions. Stevens testified in a deposition that he had heard Plaintiff discussing his back pain shortly after moving the saw. See Dkt. No. 61-9 9:3–20. Stevens also testified that he instructed Plaintiff to stop working if he had injured his back, but that Plaintiff responded that he was "fine" and that he could "continue working." Id. Plaintiff denies that he claimed to be well enough to continue working. See RSMF ¶ 32. Defendant concedes that Plaintiff informed Gutowski on March 15, 2019, and that Plaintiff required medical attention before leaving for North Carolina. See SMF ¶ 28. However, Defendant asserts that Plaintiff indicated that this treatment was for his "bowel issues." Id. Plaintiff disputes that he told Gutowski that the medical treatment was for "stomach issues alone." RSMF ¶ 28; see also Dkt. No. 71 ¶ 34 ("I did tell Gutowski [on March 18, 2019,] that I needed to go to a doctor, but I did not say it was for stomach issues."); but see id. ¶ 35 ("I told Gutowski that I was not able to see the doctor for stomach issues until later the following week.").

Both parties agree that Plaintiff did not formally report his injury to Smith and Gutowski until March 18, 2019—the day that Plaintiff was terminated. See SMF ¶ 38 ("Plaintiff did not report his medical treatment or his restrictions to any supervisor at Infinigy prior to Monday, March 18, 2019, including March 16, 2019, when he was supposed to travel to North Carolina."); RSMF ¶ 38 ("Plaintiff did report his injury to his back to supervisor Smith, and thereafter to Gutowski, on March 18, 2019, prior to his termination . . . ."). Critically, however,

Plaintiff and Defendant dispute whether Plaintiff informed Defendant of his injury and restrictions *before* or *after* being terminated.

### 3. *Plaintiff's Termination*

The parties agree that Plaintiff was originally directed to leave for North Carolina on Saturday, March 16, 2019. See SMF ¶¶ 23, 26, 29, 38; RSMF ¶ 43. However, the parties' accounts differ in several material respects. First, Defendant asserts that, on March 15, 2019—the day that Plaintiff was injured—Plaintiff reported to Gutowski that he would not be able to see a doctor for his gastrointestinal issues until March 19, 2019, and that this would delay his departure for North Carolina. See SMF ¶ 29. Defendant asserts that Gutowski "informed Plaintiff that if he was not able to leave with the fiber team on Saturday, March 16, 2019, then he would need to travel to North Carolina himself after his medical concerns had been addressed." Id. Defendant also asserts that Gutowski informed Plaintiff that, in the meantime, "there was no work for him to do in the Infinigy warehouse in Albany, New York." Id. Finally, Defendant asserts that Plaintiff stayed in Albany "unilaterally," and that he did not formally notify Defendant that he would not leave for North Carolina on March 16, 2019. Id. ¶¶ 43–44.

Plaintiff disputes this account in several respects. First, Plaintiff claims that he was "never told on March 15, 2019[,] that there was no work for him to do in the Albany warehouse." RSMF ¶ 29. Second, he argues that his decision to remain in Albany was proper because "Gutowski gave Plaintiff medical leave by telling Plaintiff that if he was not going to North Carolina [on March 16, 2019,] that he would have to take sick days or vacation days." Id. And third, Plaintiff points out that he was told to return the company car on March 18, 2019—two days after his initially scheduled departure. See id. Gutowski does not dispute that he told Plaintiff to return the car on that date. See Dkt. No. 61-20 at 2 ("Later [on March 15, 2019,]

[Plaintiff] called saying . . . he had a doctor[']s appointment on Tuesday 3/19/19. I informed him that he would have to get himself to [North Carolina] if he stayed behind and he would have to take sick and vacation time for that week as I did not have work for him to do. He said he had his car back on the road and he would drive down after his appointment. I also asked him to bring the Infinigy car to the office Monday morning as someone needed it.").

The parties agree that, on March 18, 2019, Plaintiff showed up at the warehouse. See SMF ¶ 45; RSMF ¶ 45. Defendant asserts that Gutowski saw Plaintiff "moving boxes and materials," SMF ¶ 45, and that Gutowski approached him to "re-emphasize[] that there was no available work for him in the warehouse," id. ¶ 46. Plaintiff disputes that he was moving boxes, and states that Gutowski had "just arrived at the Albany warehouse" when he encountered Plaintiff. RSMF ¶ 45.

The parties agree that, at this point, Gutowski terminated Plaintiff. Defendant asserts that Plaintiff was terminated because he had "failed to travel to North Carolina to perform the fiber work that he was directed to do," and because "Infinigy had determined that his significant performance issues did not qualify him to work as a construction manager" in Albany. SMF ¶ 49. By contrast, Plaintiff claims that Gutowski fired him after he attempted to provide Gutowski with "the medical note and paperwork regarding his injuries and restrictions," and that Gutowski had chastised Plaintiff for seeking a medical accommodation by stating: "Oh, so you're going to go down that route." RSMF ¶ 51.

Plaintiff and Defendant both agree that Gutowski drove Plaintiff back to his house afterward. See SMF ¶ 50; RSMF ¶ 50. The parties also agree that, in the car, Plaintiff attempted to give Gutowski the medical paperwork related to his back injury and associated restrictions. See SMF ¶¶ 51–52; RSMF ¶¶ 51–52. Defendant asserts that this is the first time Plaintiff

attempted to "provide Infinigy with any paperwork related to his alleged injury." SMF ¶ 53.
Plaintiff, as discussed, states that he was fired after his initial attempt to give Gutowski his
medical documentation. See RSMF ¶ 51. Because neither party disputes that Plaintiff was
terminated at the warehouse, the Court understands Plaintiff to be asserting that he first
attempted to give Gutowski his medical paperwork at the warehouse, immediately prior to his
termination. See id.

On March 21, 2019, Infinigy sent a formal termination letter to Plaintiff. See SMF ¶¶ 62–
63; see also Dkt. No. 61-12 at 1. In that letter, then-Human Resources Director Kris Bryan
asserted that the reason for termination was "performance," and she noted that Infinigy was
waiting for paperwork regarding Plaintiff's injury that was allegedly reported after Gutowski
terminated Plaintiff. Dkt. No. 61-12 at 1; see also Dkt. No. 61-10 36:3–37:6. Plaintiff admits to
the substance of the letter, but denies the truth of its contents; he asserts that the injury was
reported prior to termination, and that he was fired for requesting an accommodation rather than
for poor performance. See RSMF ¶¶ 62–63.

### B. Subsequent Litigation

#### 1. New York State Division of Human Rights Denial

After his termination, Plaintiff commenced an action with the New York State Division
of Human Rights ("NYSDHR" or the "Division"). See SMF ¶ 64; RSMF ¶ 64. On October 18,
2019, the NYSDHR determined there was insufficient evidence supporting Plaintiff's claims of
discrimination based on his military status and disability. See SMF ¶ 64; RSMF ¶ 64. The
NYSDHR found that "there is no evidence to support that Respondent Infinigy had any
knowledge of a disability prior to the day [Plaintiff] was terminated." SMF ¶ 64. The NYSDHR
also noted that Plaintiff had not informed Infinigy "that he had been seen by the doctor for his

back injury," see id., although Plaintiff asserts that he did not share this information because he was afraid of retaliation, see RSMF ¶ 64.

The Division ultimately ruled against Plaintiff, and concluded that "the Respondent has articulated legitimate, non-discriminatory reasons for the actions taken, [and that] said reasons have not been shown to be a subterfuge for an unlawful discriminatory practice under the New York State Human Rights Law." SMF ¶ 66. Plaintiff admits that the NYSDHR reached these conclusions, but disagrees with them and believes that his termination was based on his disability. See RSMF ¶ 66.

### 2. Equal Employment Opportunity Commission Denial

Plaintiff commenced an action with the United States Equal Employment Opportunity Commission ("EEOC"). See SMF ¶ 67; RSMF ¶ 67. The EEOC adopted the findings of the NYSDHR and dismissed Plaintiff's complaint. See SMF ¶ 67; RSMF ¶ 67. Plaintiff disagrees with the findings of both the NYSDHR and the EEOC. See RSMF ¶ 67.

### 3. New York State Workers' Compensation Board Denial

Plaintiff commenced an action with the New York State Workers' Compensation Board for alleged work-related injuries to the neck, lower back, left shoulder, as well as for right carpal tunnel syndrome, consequential left knee, and consequential post-traumatic stress disorder. See SMF ¶ 68; RSMF ¶ 68. The claim was dismissed, and the dismissal later affirmed on appeal. See SMF ¶ 68; RSMF ¶ 68.

The Workers' Compensation Board found that Plaintiff "was not a credible witness" and that the audio records were not made by one with a "legitimate claim." SMF ¶ 69; see RSMF ¶ 69. The Board did not believe that Plaintiff wished to go to North Carolina, particularly because of the WorkFit medical evaluation conducted the day after Plaintiff was instructed to leave the

state, and because Plaintiff asked to have the transfer rescinded altogether (rather than ask for work restrictions). See SMF ¶ 69; RSMF ¶ 69. The Board also found support for the denial in Dr. Penner's report, in which Dr. Penner found that Plaintiff's shoulder, back, and neck pain "were consistent with underlying degenerative changes." See SMF ¶ 69; RSMF ¶ 69. Plaintiff claims to be in the process of appealing this decision to the New York Court of Appeals. See RSMF ¶ 69.

### C.  Procedural History

Plaintiff commenced this action in United States District Court for the Northern District of New York against Infinigy, Smith, Gutowski, and Stevens by filing a summons and complaint on May 26, 2020. See Summons; Compl. Plaintiff filed an amended complaint on September 21, 2020. See Am. Compl. The Amended Complaint asserted five separate causes of action against Defendants: (1) ADA violations against Infinigy, Stevens, and Gutowski; (2) violation of Uniformed Services Employment and Reemployment Rights Act (USERRA) against Infinigy, Stevens, and Gutowski; (3) *prima facie* torts against all Defendants; (4) intentional infliction of emotional distress against all Defendants; and (5) negligent infliction of emotional distress against all Defendants. See Am. Compl.

Defendants moved to dismiss the Amended Complaint on October 8, 2020. Dkt. No. 21. This Court's Memorandum-Decision and Order dated May 24, 2021, dismissed all Plaintiff's claims aside from the ADA claim against Infinigy, who is now the sole remaining defendant. See May 2021 MDO at 11–12. This Court declined to exercise supplemental jurisdiction over Plaintiff's claims for intentional infliction of emotional distress, negligent infliction of emotional distress and *prima facie* tort. See id. at 9–11. Soon thereafter, Plaintiff commenced an action against Defendants in New York Supreme Court alleging analogous claims for intentional infliction of emotional distress, negligent infliction of emotional distress and *prima facie* tort.

See SMF ¶ 75; RSMF ¶ 75. The New York Supreme Court dismissed Plaintiff's complaint in its entirety. See SMF ¶ 75; RSMF ¶ 75.

On May 8, 2023, Infinigy filed a motion for summary judgement on the remaining ADA claim. See Mot. for Summ. J. In response, Plaintiff filed a cross-motion for summary judgment on June 15, 2023. See Cross-Mot. for Summ. J. This Court now denies both motions for the reasons set forth below.

## III.   LEGAL STANDARD

### A.  Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . [f]actual disputes that are irrelevant or unnecessary will not be counted." Id.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. See id. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986).

Federal courts must show caution in awarding summary judgment in discrimination actions because "direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions." Schiano v. Quality

11

Payroll Sys., 445 F.3d 597, 603 (2d. Cir. 2006) (quoting Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001)). Summary judgment nonetheless remains available in discrimination cases lacking genuine issues of material fact. See id.

### B. Americans with Disabilities Act (42 U.S.C. § 12101 et seq.)

#### 1. Discrimination – Adverse Action

The ADA prohibits certain employers from discriminating against qualified individuals based on disability. See 42 U.S.C. § 12112(a). Discrimination claims brought under the ADA are evaluated pursuant to the burden-shifting analysis articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–03 (1973). See McMillan v. City of New York, 711 F.3d 120, 125 (2d. Cir. 2013) ("Claims alleging disability discrimination in violation of the ADA are subject to the burden-shifting analysis originally established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792." (citing McBride v. BIC Consumer Prods. Mfg. Co., 583 F.3d 92, 96 (2d Cir. 2009)) . First, "the plaintiff bears the initial burden of establishing a prima facie case of discrimination." Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 106 (2d Cir. 2010) (citing McDonnell Douglas, 411 U.S. at 802). Upon satisfaction of the first step, the burden shifts to the defendant, who must "articulate 'some legitimate, nondiscriminatory reason' for its action." Id. (quoting McDonnell Douglas, 411 U.S. at 802). Then, if satisfied, the burden shifts back to the plaintiff to "show that the employer's determination was in fact the result of discrimination." Id. (citing Holcomb v. Iona College, 521 F.3d 130, 138 (2d Cir. 2008).

To rebut the articulated justification for purported adverse employment action, "the plaintiff must show both that the reason was false, and that discrimination was the real reason." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 n.4 (1993) (internal quotation marks omitted).

#### 2. Discrimination – Failure to Accommodate

Pursuant to the ADA, employers may face liability for—amongst other things—failing to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5). To make a *prima facie* case of disability discrimination arising from a failure to accommodate, a plaintiff must show that (1) they are disabled under the meaning of the ADA; (2) an employer covered by the ADA had notice of their disability; (3) with reasonable accommodation, they could perform at-issue essential job functions; and (4) the employer refused to make disability accommodations. See McBride v. BIC Consumer Prods. Mfg. Co., 583 F.3d 92, 97 (2d Cir. 2009).

It is the plaintiff's burden to establish the existence of some accommodation that would allow them to perform their essential job functions. See id. "Essential functions" broadly encompasses "the fundamental job duties of the employment position." 29 C.F.R. § 1630.2(n)(1). The ADA enumerates some examples of "reasonable accommodations," such as "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B).

## IV.   DISCUSSION

In his Amended Complaint, Plaintiff asserts a claim for "ADA V[iolations]." Am. Compl. ¶¶ 21–28. Plaintiff does not specify which section(s) of the ADA he believes were violated. However, in its May 2021 MDO, the Court construed this claim as an ADA discrimination claim. See May 2021 MDO at 4–6. Plaintiff has not objected to this characterization. Nor does

13

Plaintiff suggest in his Amended Complaint that he is asserting a retaliation claim. See Am. Compl. ¶¶ 21–28. Accordingly, the Court will continue to construe Plaintiff's ADA cause of action as a discrimination claim, and the Court does not construe Plaintiff's filings to assert any retaliation or intimidation claims pursuant to 42 U.S.C. § 12203.

"Discrimination claims under the ADA may be brought under a theory of adverse employment action or of failure to provide reasonable accommodation." Berger v. N.Y.C. Police Dep't., 304 F. Supp. 3d 360, 368 (S.D.N.Y. 2018). Plaintiff's Amended Complaint appears to state a discrimination claim based upon both theories of discrimination. See, e.g., Am. Compl. ¶ 25 ("Infinigy failed to provide Plaintiff this reasonable accommodation and instead terminated his employment."). Accordingly, and for the purposes of these motions for summary judgment, the Court will construe Plaintiff's Amended Complaint as asserting discrimination both upon the basis of an adverse employment act, and upon the basis of a failure to provide reasonable accommodation.

For the reasons that follow, both motions for summary judgment are denied.

### A. *Prima Facie* Discrimination Claim – Adverse Action

To assert a *prima facie* case of disability discrimination based on an adverse act, Plaintiff must demonstrate that "(1) [his] employer is subject to the ADA; (2) [he] is disabled within the meaning of the ADA; (3) [he] is otherwise qualified to perform the essential functions of [his] job with or without accommodation; and (4) [he] suffered an adverse employment action because of [his] disability." Harvin v. Manhattan & Bronx Surface Transit Operating Auth., 767 Fed.

App'x. 123, 127 (2d Cir. 2019) (quoting Jacques v. DiMarzio, Inc., 386 F.3d 192, 198 (2d Cir. 2004)).

It is not disputed by either party that Infinigy is subject to the ADA as an employer. See also 29 C.F.R. § 1630.2(e) (defining an "employer" as an entity must be "engaged in an industry affecting commerce who has 15 or more employees"). However, the three remaining elements of *prima facie* discrimination are subject to genuine disputes of material fact.

### 1. *Plaintiff's Disability*

There is a three-step inquiry for determining whether a medical condition rises to the level of disability. See Bragdon v. Abbott, 524 U.S. 624, 631 (1998). First, the court must determine whether the alleged condition is physical or mental. See id. Then, the court must "identify the life activity upon which [the party] relies . . . and determine whether it constitutes a major life activity under the ADA." Id. Third, the court must determine whether the identified impairment substantially limits a major life activity. See id.

Here, Plaintiff's condition is physical. See SMF ¶¶ 31, 33; RSMF ¶¶ 31, 33. Furthermore, there is no question that Plaintiff's disability impacted a "major life activity" at the time of his termination. The WorkFit Record restricted Plaintiff from, among other things, lifting, pushing, pulling, bending, twisting, kneeling, squatting, sitting, prolonged standing and walking. See WorkFit R. at 5. As "major life activities include . . . performing manual tasks . . . walking, standing, lifting, bending . . . and working," 42 U.S.C. § 12102(2)(a), Plaintiff has adequately alleged that his injury impacted his ability to perform major life activities.

The question remaining is whether the limitations in question are substantial. Infinigy argues that Plaintiff's limitations could not have been substantial because they were temporary in nature. See Mot. for Summ. J. at 7. However, by Plaintiff's account—and as this Court noted in

its May 2021 MDO—the alleged effects of Plaintiff's injury have continued for over a year, and Plaintiff's limitations are therefore "more than transitory as a statutory matter." May 2021 MDO at 5 (citing 42 U.S.C. § 12102(3)(B)).

But even if Plaintiff's limitations were transitory, this would not render Plaintiff's limitations insubstantial. It is true that temporary conditions did not historically receive ADA protection. See Graaf v. North Shore Univ. Hosp., 1 F. Supp. 2d 318, 321 (S.D.N.Y. 1998) ("Courts within this circuit and the vast majority of courts elsewhere which have considered the question, have held that temporary disabilities do not trigger the protections of the ADA because individuals with temporary disabilities are not disabled persons within the meaning of the act"). However, this is no longer the case. After Congress amended the ADA in 2008, the EEOC implemented new regulations clarifying that even short-term impairments can be limiting for the purposes of 42 U.S.C. § 12102(1)(a). See 29 C.F.R. § 1630.2 ("The effects of an impairment lasting or expected to last fewer than six months can be substantially limiting within the meaning of this section").

While Defendant's argument that a temporary limitation cannot be substantial is unavailing, Plaintiff still bears the burden of affirmatively establishing that his injury has imposed such substantial limitations. "To survive a motion for summary judgment on the issue of whether a plaintiff's condition substantially limits a major life activity, a plaintiff must not only (1) describe how those life activities are limited, but must also (2) support this description with competent medical evidence." Silman v. Utica College, No. 14-CV-0432, 2016 WL 4275721, at *6 (N.D.N.Y. Aug. 12, 2016) (Kahn, J.) (citations and quotation marks omitted). In this case, Plaintiff has submitted 167 pages of medical records. See Dkt. No. 74 ("Medical Records"). The Medical Records show that Plaintiff has suffered worsening back, neck, and

shoulder pain, even long after the alleged injury. See, e.g., id. at 2–3 (documenting a medical visit on January 15, 2021, and describing Plaintiff's symptoms as "getting progressively worse"). Furthermore, Plaintiff's complaints of back pain appear to be corroborated by radiographs showing a herniated disc. See, e.g., id. at 20–23

In light of these medical records, the Court finds that there is a genuine dispute of material fact over (1) the scope of Plaintiff's injury, as a factual matter, and (2) whether Plaintiff's injury is sufficiently limiting to constitute a disability under the ADA. The Court does not conclude, as a matter of law, that Plaintiff is disabled, nor does it find that all of Plaintiff's reported symptoms are related to the alleged injury that took place on March 15, 2019. However, the evidence provided by Plaintiff, when "viewed in the light most favorable to" him, could lead a "reasonable fact finder" to rule in his favor. Gold v. Carus, 131 Fed. App'x. 748, 750 (2d Cir. 2005). Accordingly, Defendant is not entitled to summary judgment on the issue of Plaintiff's disability.

### 2. Plaintiff's Qualifications

There are genuine disputes of material fact as to whether Plaintiff was qualified to perform the essential functions of his job with or without accommodation.

To be "qualified" for a position, one must be able to "perform the essential functions of the employment position that such individual holds or desires," with or without reasonable accommodation. 42 U.S.C. § 12111(8). Plaintiff was hired as a construction manager. SMF ¶¶ 4–5; RSMF ¶¶ 4–5. The parties agree that Plaintiff was expected to know "the basic functions of a construction manager," such as "how to manage job sites, keeping projects timely and on budget, and managing crews," SMF ¶ 7; see RSMF ¶ 7, although there is some dispute about whether the job required Plaintiff to "manage the day-to-day operations of a job's operations and crew," see

Dkt. No. 83 at 8. The parties also agree that Plaintiff was "expected to monitor the project's financials, conduct quality control reviews, complete site audits, update the project manager or operation personnel about the project, complete safety checks on sites, and meet with customers on site to go over statements of works and any issues with the project." SMF ¶ 8; see RSMF ¶ 8.

The parties also agree that there were conflicts between Plaintiff and his supervisors. See SMF ¶ 10 ("[I]t was apparent immediately that [Plaintiff] did not have the requisite skills, experience, or abilities for the position"); RSMF ¶ 10 ("Plaintiff's difficulties with his supervisors began on January 12, 2019. . . ."). Defendant asserts that Plaintiff failed "to adequately update Infinigy's clients about the progress of their expensive, time sensitive, and complex projects," SMF ¶ 11, that he "was repeatedly found not to be following simple instructions given to him by his supervisor," id. ¶ 12, and that he did "not know the particulars of the site he was working on or visiting, despite being told to do so," id. ¶ 13. Defendant alleges that, as a result of these lapses, Plaintiff was called into a meeting on February 20, 2019, where he was warned about his poor performance. See id. ¶¶ 15–16.

As noted, Plaintiff denies Infinigy's assertions that his performance was poor; he points out that he had received positive feedback from Smith and another coworker. See RSMF ¶¶ 10–13. And, as discussed, Plaintiff asserts that the enhanced scrutiny from his supervisors was precipitated by his complaints regarding safety issues at Infinigy's job sites. See id. ¶¶ 10, 16.

Aside from one email chain suggesting that Plaintiff had failed to send a client photos of a job site on an hourly basis, see Dkt. No. 61-17, Defendant has not provided any contemporaneous evidence of Plaintiff's performance deficiencies. For example, Defendant has not provided written feedback, performance reviews, or a performance improvement plan. Therefore, in order to determine whether Plaintiff was qualified to perform the essential

functions of his job, a fact-finder would need to evaluate the credibility of Gutowski, Smith, and Allen—each of whom assert that Plaintiff's performance was poor—against the credibility of Plaintiff, who provides competing explanations for each allegation of poor performance. Gutowski and Allen, for example, assert that Plaintiff's performance was discussed at the meeting on February 20, 2019. See Dkt. No. 61-16 ¶ 17; Dkt. No. 61-19 at 1. Plaintiff, on the other hand, asserts that his performance was not discussed at this meeting, and that the participants instead discussed Infinigy's projects and safety record. See RSMF ¶ 16; but see id. ¶ 69 (asserting that Plaintiff was "unjustly blamed for Infinigy's fourth failed inspection" at the meeting on February 20, 2019).

Accordingly, there are genuine disputes of material fact regarding Plaintiff's job performance. Infinigy has not carried its burden in showing that no reasonable fact-finder could find that Plaintiff was unqualified to work as a construction manager, and so the Court cannot grant summary judgment on that basis.

### 3. Adverse Employment Action

Defendant argues that it is entitled to summary judgment because it was not aware of Plaintiff's injuries prior to his termination, and so Defendant could not have terminated him on that basis. See Mot. for Summ. J. at 3–5, 11–12. However, Plaintiff has disputed this in three respects.

First, Plaintiff asserts that Infinigy CEO Stevens witnessed Plaintiff's back injury on March 15, 2019, when Plaintiff was injured at Stevens' house. See RSMF ¶ 53. Stevens seems to concede that he knew of Plaintiff's back injury, see Dkt. No. 61-9 9:3–20, but Plaintiff and

Stevens have conflicting accounts of their discussion regarding his back, see SMF ¶ 32; RSMF ¶ 32.

Second, Plaintiff asserts that his supervisors were otherwise aware of Plaintiff's back injury. See RSMF ¶ 28 (asserting that Plaintiff notified Gutowski that he needed to see a doctor prior to his termination); see also Dkt. No. 75-1 at 8–9 (transcript of a recorded conversation allegedly showing that Plaintiff notified Gutowski of his back injury on March 15, 2019); id. at 6 (transcript of a recorded conversation allegedly showing that Plaintiff notified Smith of his back injury on March 18, 2019, prior to his termination); cf. RSMF ¶ 27.

Third, and most critically, Plaintiff asserts that he was terminated *after* presenting his medical paperwork to Gutowski, rather than before. While Defendant asserts that Plaintiff provided Gutowski with his paperwork on the drive home, see SMF ¶ 51, Plaintiff asserts that Gutowski had only terminated him after negatively reacting to Plaintiff's attempt to present his medical documentation, see RSMF ¶ 51.

Each of these disputes is both genuine and material. In particular, Defendant has not definitively shown that Plaintiff did not present Gutowski with his medical documentation prior to his termination. Instead, Plaintiff's evidence and testimony are sufficient—when viewed in a light most favorable to Plaintiff—to allow a reasonable fact-finder to conclude that Plaintiff's termination was because of his disability.

The Court concludes that there is a genuine dispute as to Defendant's intent based on two details. First, Plaintiff alleges that, upon receipt of Plaintiff's medical documentation, Gutowski accused Plaintiff of "going . . . down [this] route." RSMF ¶ 51. A reasonable trier of fact might infer from this statement that the ensuing termination was triggered by Plaintiff informing Gutowski of his alleged disability. Second, and according to Plaintiff, the termination took place

20

immediately *after* Plaintiff's disclosure. This temporal proximity is sufficient to create a genuine dispute of material fact as to whether Gutowski fired Plaintiff with discriminatory intent. See Gray v. Onondaga-Cortland-Madison BOCES, No. 16-CV-973, 2020 WL 1029022, at *6 (N.D.N.Y. Mar. 3, 2020) ("[G]iven the *de minimis* burden at the prima facie stage, Plaintiff's evidence of temporal proximity is enough to permit an inference of discriminatory intent.") (citing cases).

Accordingly, Defendant has failed to meet its burden of showing that, as a matter of law, there was no causal connection between Plaintiff's termination and Plaintiff's disability. Therefore, summary judgment is not warranted on this basis, and Defendant's discrimination claim survives this review based on a theory of adverse employment acts.

## B. *Prima Facie* Discrimination Claim – Failure to Accommodate

To make a *prima facie* case of disability discrimination arising from a failure to accommodate, a plaintiff must show that (1) they are disabled under the meaning of the ADA; (2) an employer covered by the ADA had notice of their disability; (3) with reasonable accommodation, they could perform at-issue essential job functions; and (4) the employer refused to make reasonable accommodations. See McBride, 583 F.3d at 97.

The Court has already addressed the first, second, and third prongs of this test, and has found that they are subject to genuine disputes of material fact. See *supra* Part IV.A. The fourth prong—whether Defendant refused to make a reasonable accommodation—is also contested,

because there is a genuine dispute as to whether Defendant even knew about Plaintiff's alleged disability prior to his termination. See *supra* Part IV.A.3.

Accordingly, Infinigy is not entitled to summary judgment on Plaintiff's failure-to-accommodate claim. As a result, Plaintiff's ADA discrimination claim also survives summary judgment on the theory that Defendant failed to accommodate Plaintiff's alleged disability.

In so ruling, however, the Court expresses no view as to Plaintiff's credibility. In particular, the Court notes that Plaintiff appears to contradict himself at several points. Plaintiff states, for example that his performance was not discussed at the meeting on February 20, 2019. See RMSF ¶¶ 15–16. However, he later concedes that he was "unjustly blamed for Infinigy's fourth failed inspection" at that same meeting. Id. ¶ 69. Plaintiff also asserts that he did not tell Gutowski that his doctor's appointment was for stomach issues, see Dkt. No. 71 ¶ 34 ("I did tell Gutowski [on March 18, 2019,] that I needed to go to a doctor, but I did not say it was for stomach issues."), but appears to contradict this claim in the following paragraph, see id. ¶ 35 ("I told Gutowski that I was not able to see the doctor for stomach issues until later the following week.").

However, none of the inconsistencies found by the Court are dispositive with respect to these summary judgment motions. The purpose of summary judgment is to determine whether a movant is "entitled to a judgment as a matter of law," provided that there are "no genuine dispute[s] as to any material fact." Fed. R. Civ. P. 56(a). The contradictions noted by the Court may speak to Plaintiff's credibility, but they do not resolve the underlying disputes of material fact. And, at summary judgment, the Court "may not make credibility determinations or weigh the evidence[;]" this is because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts" are functions of the trier of fact, and are not

suited to pre-trial motions. Kaytor v. Electric Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010)

(quoting Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000)).

### C.  McDonnell-Douglas Burden-Shifting Test

"Because the Defendant[] failed to demonstrate the absence of a genuine dispute of

material fact" as to Plaintiff's *prima facie* discrimination claims, the Court need not proceed to

the latter two steps of the McDonnell-Douglas test. Tatas v. Ali Baba's Terrace, Inc., No. 19-CV-

10595, 2022 WL 18027620, at *5 (S.D.N.Y. Dec. 30, 2022). But "even if the Court had

undertaken to do so, Defendant['s] continued reliance on disputed material facts to establish their

'legitimate, non-discriminatory reasons' for terminating [Plaintiff]" would have precluded

summary judgment. Id. In other words, even if the Court had determined that there was no

material dispute as to a legitimate, non-discriminatory reason to terminate" Plaintiff, Defendant's

"entitlement to summary judgment would still fail because at the third step of the *McDon[n]ell*

*Douglas* analysis, there exists a dispute of material fact as to whether the termination was

pretextual." Id.

Therefore, the Court will not proceed to examine Infinigy's motive for terminating

Plaintiff in any greater detail. Genuine issues of material fact preclude the Court from awarding

summary judgment to either party, and these issues must be resolved by a trier of fact.

### D.  Plaintiff's Cross-Motion for Summary Judgment

For all the reasons described above, Plaintiff's Cross-Motion for Summary Judgment

must also fail. Plaintiff has failed to establish, as a matter of law, (1) the existence of his

disability; (2) his qualifications to perform to job from which he was terminated; (3) any causal

connection between his disability and his termination; (4) that Infinigy had notice of his

disability; and (5) that Infinigy failed to make reasonable accommodations for his alleged

disability. In other words, Infinigy has provided evidence that, viewed in the light most favorable

to Infinigy, is sufficient to allow a reasonable fact-finder to find in Infinigy's favor. Accordingly,

Plaintiff's Cross-Motion is denied in its entirety.

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED,** that Infinigy's Motion for Summary Judgment is **DENIED**;

**ORDERED,** that Plaintiff's Cross-Motion for Summary Judgment is **DENIED**; and it is

further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision

and Order on all parties.

**IT IS SO ORDERED.**

DATED:      March 15, 2024
              Albany, New York

LAWRENCE E. KAHN
United States District Judge