UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

EDWARD ZELTMAN,

          **Plaintiff,**

 vs.                1:20-CV-571
                       (MAD/CFH)
INFINIGY SOLUTIONS, LLC,

          **Defendant.**
_____

APPEARANCES:            OF COUNSEL:

**MOSKOWITZ COLSON GINSBERG &**   EYLAN SCHULMAN, ESQ.
**SCHULMAN, LLP**
80 Broad Street – 19th Floor
New York, New York 10004
Attorneys for Plaintiff

**LAW OFFICE OF RICHARD CARDINALE**  RICHARD CARDINALE, ESQ.
26 Court Street – Suite 1504
Brooklyn, New York 11242
Attorneys for Plaintiff

**BARCLAY DAMON LLP**        MICHAEL J. MURPHY, ESQ.
80 State Street             BRIENNA L. BRAMAN, ESQ.
Albany, New York 12207
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff commenced this action *pro se* on May 26, 2020, against Defendants Infinigy Solutions, LLC ("Infinigy"), Jeffrey Gutowski, and John Stevens, claiming he was terminated from his position as a construction manager on March 18, 2019, because of a disability (or a perceived disability) and that Defendants failed to provide him with a reasonable accommodation, all in violation of the Americans with Disabilities Act ("ADA"). *See* Dkt. No. 1.

Trial is scheduled to commence on August 12, 2024.  Currently before the Court are the parties' pre-trial motions *in limine*.  *See* Dkt. Nos. 106 & 116.

## II. BACKGROUND

For a complete recitation of the relevant factual background, the parties are referred to the Court's March 15, 2024 Memorandum-Decision and Order.  *See* Dkt. No. 92.

## III. DISCUSSION

A.   **Standard of Review**

The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility of certain forecasted evidence.  *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *see also Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996).  A court should exclude evidence on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds.  *See Baxter Diagnostics, Inc. v. Novatek Med., Inc.*, No. 94 Civ. 5220, 1998 WL 665138, *3 (S.D.N.Y. Sept. 25, 1998).  Courts considering motions *in limine* may reserve decision until trial so that the motion is placed in the appropriate factual context.  *See Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Group*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996).  Alternatively, the court is "free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling" at trial as "the case unfolds, particularly if the actual testimony differs from what was contained in the [movant's] proffer."  *Luce*, 469 U.S. at 41-42.

A.   **Testimony of Jody Lounsbury**

In its motion *in limine*, Defendant asks the Court to preclude Plaintiff from introducing the testimony of Jody Lounsbury.  *See* Dkt. No. 106-1 at 7-8.  According to Defendant, Mr. Lounsbury is a former employee of Infinigy who filed a complaint with the New York State Division of Human Rights alleging that he was discriminated against based upon his military

2

service. *See id.* at 7. Defendant claims that, "[u]pon information and belief, the sole purpose for Plaintiff's solicitation of Mr. Lounsbury's testimony would be to solicit witness testimony about Mr. Lounsbury's allegations of discrimination based upon military service during his employment with Infinigy." *Id.* Because the Court has dismissed Plaintiff's claim under the Uniformed Services Employment and Re-employment Rights Act of 1994 ("USERRA"), Defendant contends that this testimony is irrelevant. *See id.*

Plaintiff has not specifically responded to this aspect of Defendant's motion. However, in his witness list, Plaintiff lists Mr. Lounsbury as a potential witness and indicates that he "will testify only if [D]efendant opens the door to irrelevant subjects." Dkt. No. 115 at 2.

Without the benefit of a response from Plaintiff, the Court is unable to resolve this aspect of Defendant's motion at this time. Accordingly, the Court reserves on this aspect of Defendant's motion *in limine*.

**B.      Testimony Regarding Whistleblower Claims**

Defendant next contends that Plaintiff should be precluded from introducing evidence in support of his dismissed whistleblower claims. *See* Dkt. No. 106-1 at 9-10. Defendant notes that Plaintiff's proposed exhibit list reflects that Plaintiff will seek to introduce evidence in support of a purported "whistleblower" claim for complaining about alleged wrongdoing by Defendant at worksites. *See id.* at 9 (citing P-7, P-16, and P-21). Plaintiff has not responded to this aspect of Defendant's motion.

The Court generally agrees with Defendant's argument that any exhibits relating to whistleblower claims that were previously dismissed by the Court would be irrelevant because Plaintiff's only remaining claims are ADA discrimination claims. However, the Court is unable to determine at this time, based on the brief descriptions in Plaintiff's exhibit list, whether these

3

documents are irrelevant and should be precluded. Accordingly, the Court reserves on this aspect of Defendant's motion *in limine*.

**C.      Plaintiff's Testimony Concerning his Alleged Injuries and Medical Records**

Defendant notes that Plaintiff has not disclosed an expert witness and it anticipates that Plaintiff "will attempt to testify about his injuries, including causation, permanency, scope, and treatment." Dkt. No. 106-1 at 10. Defendant argues that Plaintiff should be precluded from offering such testimony "to the extent that it goes beyond the common knowledge and experience of the jury" because Plaintiff is not an expert qualified to testify on these matters. *See id.* at 10-11. Relatedly, Defendant argues that Plaintiff should not be permitted to introduce his medical records without testimony from a healthcare provider regarding the alleged injuries being referenced in the medical records. *See id.* at 11-12. In response, Plaintiff contends that he can testify about the injuries he sustained, which does not require expert medical testimony considering the nature of his injuries, and that he can authenticate the medical records. *See* Dkt. No. 116-1 at 3-5.

Initially, the Court finds Defendant's arguments regarding the authentication of Plaintiff's medical records to be without merit. Rule 901(a) of the Federal Rules of Evidence provides that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). The Second Circuit has said time and time again that "[t]he bar for authentication of evidence is not particularly high and the proof of authentication may be direct or circumstantial." *United States v. Al-Moayad*, 545 F.3d 139, 172 (2d Cir. 2008). One of the most common methods of authentication is through witness testimony. *See Vereen v. City of New Haven*, No. 3:17-CV-1509, 2018 WL 6069098, *8 (D. Conn. Nov. 20, 2018) (citations omitted);

*see also United States v. Vayner*, 769 F.3d 125, 130 (2d Cir. 2014). Here, Plaintiff will be able to testify to the authenticity of the medical records, which is sufficient to satisfy Rule 901. *See McCrae v. H.N.S. Mgmt. Co.*, No. 3:22-cv-217, 2024 WL 1973431, *3 (D. Conn. May 3, 2024) (holding that the plaintiff in an ADA case could authenticate his medical records at trial).

Defendant next argues that Plaintiff should be precluded from offering testimony about his injuries and/or medical records "to the extent that it goes beyond the common knowledge and experience of the jury" because Plaintiff is not an expert qualified to testify on these matters. Initially, the Court notes that Defendant has not attached Plaintiff's medical records as an exhibit to its motion and has not identified any specific portion of those records that it finds objectionable. Without Plaintiff's medical records and more specific objections, the Court is unable to determine the admissibility at this time. However, the Court notes that "not all information contained in a medical record is beyond the ken of the jury." *Bermudez v. City of New York*, No. 15-cv-3240, 2019 WL 136633, *11 (E.D.N.Y. Jan. 8, 2019). Although certain aspects of the medical records are likely beyond the ken of the jury and will be inadmissible, other aspects of the records will certainly be admissible, especially considering the nature of Plaintiff's alleged disability.

Courts have also found medical evidence is not always required to support a disability discrimination claim under the ADA and that the determination must be made on a case-by-case basis. *See Rodriguez v. Village Green Realty, Inc.*, 788 F.3d 31, 43 (2d Cir. 2015) (holding that "[n]either the ADA or the FHA's text, nor the respective implementing regulations require medical evidence to establish ... the impairment of a major life activity" and noting that "[m]edical testimony may be helpful to show that an impairment is substantially limiting, but it is not always required") (citations omitted); *see also Mancini v. City of Providence*, 909 F.3d 32, 39

5

(1st Cir. 2018) ("Whether medical evidence is necessary to support a disability discrimination claim is a determination that must be made on a case-by-case basis") (citations omitted). "Medical evidence is more likely to be necessary to show an impairment when a condition would be unfamiliar to a lay jury and only an expert could diagnose that condition." *Id.* at 41 (citation omitted); *Felkins v. City of Lakewood*, 774 F.3d 647, 648, 652 (10th Cir. 2014) (requiring medical testimony to establish that the plaintiff's diagnosis of avascular necrosis, " a rare condition that can cause bone tissue to die from poor blood supply," was an impairment under the ADA). However, where the condition is familiar to a lay jury, medical testimony is not necessary required.  In *Katz v. City Metal Co., Inc.*, 87 F.3d 26, 31 (1st Cir. 1996), the First Circuit expressed "no doubt that a rational jury could conclude, even without expert medical testimony," that the plaintiff's heart attack was a condition affecting the cardiovascular system and therefore was a physical impairment for purposes of the ADA.  So, too, the Third Circuit determined that a plaintiff's "failure to present medical evidence of his impairment" was not fatal because arm and neck pain are "among those ailments that are the least technical in nature and are the most amenable to comprehension by a lay jury." *Marinelli v. City of Erie*, 216 F.3d 354, 361 (3d Cir. 2000).  "On a spectrum that ranges from missing limbs to rare medical infirmities, some conditions plainly fall within the universe of impairments that a lay jury can fathom without expert guidance.  These conditions do not require medical evidence in an ADA case." *Mancini*, 909 F.3d at 42.

Here, Plaintiff's injuries have allegedly caused back, neck, and shoulder pain.  Plaintiff is clearly capable of testifying about his injuries and how they have impacted one or more major life activities, as required to prove his claim.  *See id.* at 43 (holding that no expert testimony was required for the plaintiff to establish that his knee injury, which required surgery, impacted major

6

life activities such as walking, standing, and bending). While Plaintiff cannot provide medical opinion evidence, he is permitted to testify about his medical conditions and the limitations they impose.

Accordingly, this aspect of Defendant's motion *in limine* is denied without prejudice. At trial, Defendant will be free to object to any testimony or medical records it believes should be excluded. The parties are strongly encouraged to review the medical records prior to trial and stipulate to any records that are admissible and redact any portions they believe appropriate.

**D.     Punitive Damages**

Defendant contends that Plaintiff should be precluded from requesting an award of punitive damages because "[t]here is simply no evidence that Infinigy acted with the requisite level of malice or reckless indifference sufficient to permit Plaintiff to request punitive damages." Dkt. No. 106-1 at 13-14. The Court disagrees.

A party prevailing upon a claim of unlawful intentional discrimination under the ADA may recover punitive damages "if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). To warrant an instruction on punitive damages, "'[a]ll that a party needs to show is that there is some evidence supporting the theory behind the instruction so that a question of fact may be presented to the jury.'" *Cameron v. City of New York*, 598 F.3d 50, 69 (2d Cir. 2010) (quotation omitted).

Here, the Court finds that it is premature to rule on this issue at this time. At the close of evidence, Defendant may renew this request, if appropriate. Accordingly, this aspect of Defendant's motion *in limine* is denied without prejudice.

E.   **Nominal Damages**

Plaintiff argues that the Court should not charge the jury on nominal damages "because if the jury determines that defendant is liable, the discriminatory terminations of plaintiff resulted in undisputed actual damages, both financial and emotional." Dkt. No. 116-1 at 8 (citing *Kerman v. City of New York*, 374 F.3d 93, 123 (2d Cir. 2004)).

This request is denied without prejudice as premature. It is unclear at this time whether the jury should be instructed on the issue of nominal damages. Plaintiff may renew this request at the close of trial if appropriate.

F.   **Undue Hardship Defense**

Plaintiff contends that Defendant has waived an undue hardship defense because "[i]n its memorandum of law in support of its motion for summary judgment and answer to the amended complaint, [D]efendant did not contend that a reasonable accommodation would amount to an undue hardship." Dkt. No. 116-1 at 6-7 (citations omitted). Plaintiff claims that he "would be unfairly surprised if [D]efendant is permitted to raise an undue hardship defense at this late stage in the case." *Id.* at 7. Defendant, however, contends that there is no requirement that the defense of undue hardship be pled as an affirmative defense. *See* Dkt. No. 120 at 5-6.

Here, the Court finds that this aspect of Plaintiff's motion must be denied. As Defendant correctly notes, courts in the Second Circuit have found that the defense of undue hardship is not necessarily waived when not included in a defendant's answer. *See Kreisler v. Humane Society of N.Y.*, No. 16-cv-8177, 2017 WL 11568964, *2 (S.D.N.Y. Dec. 20, 2017) (holding that the defendant's failure to raise an undue hardship defense in its answer does not necessarily waive that defense and noting that "courts in the Second Circuit that have considered whether undue hardship must be plead[ed] as an affirmative defense under the ADA and NYCHRL have

8

determined that it does not'") (citations omitted); *Gorbea v. Verizon N.Y., Inc.*, No. 11 Civ. 3758, 2014 WL 2916964, *4 (E.D.N.Y. June 25, 2014) (denying motion to exclude evidence of undue hardship from trial where the defendant "did not explicitly plead 'undue hardship' as an affirmative defense") (citations omitted); *Brooklyn Ctr. for Independence of the Disabled v. Bloomberg*, 980 F. Supp. 2d 588, 657 (S.D.N.Y. 2013) (holding, in an ADA public accommodation case, that it was unnecessary for the defendants to plead undue hardship because plaintiffs had not proposed specific accommodations).

Additionally, Rule 8(c) of the Federal Rules of Civil Procedure provides that, "[i]n responding to a pleading, a party must affirmatively state any ... affirmative defense." But the undue hardship defense arises in response to a plaintiff's proposed accommodation. *See Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995); *see also Bloomberg*, 980 F. Supp. 2d at 657 (citations omitted). In his amended complaint, the only mention of a proposed accommodation was that his request "not to be sent to North Carolina to perform heavy labor due to his injury on March 15, 2019 was a request for a reasonable accommodation." Dkt. No. 19 at ¶ 24. This single statement is insufficient for the Court to find that Defendant should have pled this affirmative defense. *See Bloomberg*, 980 F. Supp. 2d at 657.

Even assuming Defendant was required to plead undue hardship as a defense, the Court finds that Defendant has pled this defense adequately. In its answer, Defendant denies Plaintiff's assertion that it denied Plaintiff's reasonable accommodation request and that his request "would not have posed an undue hardship to Infinigy." Dkt. No. 19 at ¶ 24; Dkt. No. 32 at ¶ 24. Moreover, Defendant asserted as an affirmative defense that Plaintiff "fails to state a claim upon which relief may be granted" and that Defendant "did not participate, engage or assist in any act or conduct" which would warrant judgment in Plaintiff's favor. Dkt. No. 32 at ¶¶ 44, 47-48.

9

Courts have found such language sufficient to provide adequate notice to a Plaintiff that this defense would be raised at trial. *See Gorbea*, 2014 WL 2916964, at *5.

Finally, even assuming that Defendant did fail to raise this affirmative defense (and was required to do so), the Court would permit Defendant to amend its answer. Plaintiff's claim that permitting Defendant to raise this claim at trial is entirely conclusory. Plaintiff has been aware from the beginning of this litigation (and earlier) that Defendant's position has been that it no longer had a position for Plaintiff in New York and that, if he wished to continue his employment with Defendant, he would be required to relocate to North Carolina. This is clearly sufficient to place Plaintiff on notice that this issue would arise at trial.

Accordingly, this aspect of Plaintiff's motion *in limine* is denied.

**G.     *McDonnell Douglas* Framework**

Plaintiff contends that, "[c]ontrary to [D]efendant's position, the *McDonnell Douglas* burden-shifting framework exists to assist a trial judge in determining whether a case meets the legal requirements for a decision by a fact-finder. The framework is not to be submitted to the jury." Dkt. No. 116-1 at 7-8 (citing *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 118 (2d Cir. 2000)). According to Plaintiff, in an employment discrimination or retaliation case, "'the job of the jury is simply to decide whether an impermissible factor was a motivating factor in the adverse employment action.'" *Id.* at 8 (citing *Gordon*, 232 F.3d at 118). The Court disagrees with Plaintiff's position, as he is conflating his burden of proof in his ADA discrimination claim with the jury charge.

To succeed on his ADA discrimination claim, Plaintiff is required to prove the following: "(1) her employer is subject to the ADA; (2) she is disabled within the meaning of the ADA; (3) she is otherwise qualified to perform the essential functions of her job with or without

accommodation; and (4) she suffered an adverse employment action because of her disability." *Harvin v. Manhattan & Bronx Surface Transit Operating Auth.*, 767 Fed. Appx. 123, 127 (2d Cir. 2019) (citation omitted).  In its Memorandum-Decision and Order granting in part and denying in part Defendant's motion for summary judgment, the Court found, among other things, that "there is a genuine dispute of material fact over (1) the scope of Plaintiff's injury, as a factual matter, and (2) whether Plaintiff's injury is sufficiently limiting to constitute a disability under the ADA." Dkt. No. 92 at 17.  Additionally, the Court found that there are genuine disputes of material fact as to whether Plaintiff was qualified to perform the essential functions of his job with or without accommodation.  *See id.* at 17-19.  As these issues are for the jury to decide, Plaintiff is fundamentally incorrect that the jury should not be charged on the issue of whether or not Plaintiff is disabled, or the remaining elements of his *prima facie* case which are in contention.

   Additionally, as Defendant notes, Plaintiff misunderstands the Second Circuit's decision in *Gordon*.  Specifically, *Gordon* does not support a proposition that Plaintiff's burden of proof at trial, and establishing the elements set forth in *McDonnell Douglas*, is somehow limited by this decision.  Rather, *Gordon* and other cases discussing the issue have expressed concern that the rote recitation of the *McDonnell Douglas* framework is unwise, "'because such language – developed by appellate courts for use by judges – is at best irrelevant, and at worst misleading to a jury.'" *Balu v. City of New York*, 679 Fed. Appx. 84, 85 (2d Cir. 2017) (quoting *Gordon*, 232 F.3d at 118).  Rather, *Gordon* warns that technical phrases that populate the *McDonnell Douglas* framework – phrases such as "prima facie case" and "presumption" – should be avoided in jury instructions.  *See Teixeira v. Town of Coventry by and through Przybyla*, 882 F.3d 13, 17 & n.2 (1st Cir. 2018).

Plaintiff contends that the Court should merely instruct the jury on "whether an impermissible factor was a motivating factor in the adverse employment action." Dkt. No. 116-1 at 7.  While such language will necessarily be included in the final instructions to the jury, more is required.  For example, unless Plaintiff establishes that he was disabled within the meaning of the ADA, he cannot prevail on his claim.  For the jury to make this determination, it must be instructed on the relevant definitions regarding what qualifies as a disability under the ADA.  If Plaintiff fails to establish this element, it necessarily follows that his alleged disability was not an impermissible motivating factor in his adverse employment action.  In crafting its instructions, the Court will strive to avoid overly technical legalese and instead rely on language that will assist the lay jury in reaching the correct conclusion.  *Sharkey v. Lasmo (AUL Ltd.)*, 214 F.3d 371, 374 (2d Cir. 2000) ("If the plaintiff has successfully made a prima facie case and the defendant has met its burden of proffering a reason other than discrimination for its actions, the court should instruct the jury that plaintiff bears the burden of proving that the defendant was motivated by prohibited discrimination—without reference to the successive burden-shifting tests that the parties have been required to pass").

Accordingly, this aspect of Plaintiff's motion *in limine* is denied.

### IV. CONCLUSION

Having carefully considered the parties' submissions in this matter and the applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that Defendant's motion *in limine* (Dkt. No. 106-1) is **DENIED in part** and **RESERVED on in part**; and the Court further

**ORDERS** that Plaintiff's motion *in limine* (Dkt. No. 116-1) is **DENIED**; and the Court further

12

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: August 5, 2024
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge